```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      SOUTHERN DIVISION at PIKEVILLE
```

TRACIE M. CRACE,                    )
                                    )
    Plaintiff,                      )
                                    )        Civil Action No.
v.                                  )        7:13-CV-44-JMH
                                    )
CAROLYN W. COLVIN, ACTING           )        **MEMORANDUM OPINION**
COMMISSIONER OF SOCIAL              )            **AND ORDER**
SECURITY,                           )
                                    )
    Defendant.                      )

*** *** ***

The plaintiff, Tracie M. Crace, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for Social Security benefits. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence and was decided by proper legal standards.

**I.   OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential evaluation process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1) If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2) If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5) Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Id*. The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. § 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is

work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a mere scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id*. Rather, the Court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into

account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II. THE ADMINISTRATIVE PROCESS

Crace filed her claim for Supplemental Security Income on June 15, 2010 [TR 152-55]. She claims that she became disabled and unable to work on April 9, 2005 due to osteoporosis, migraine headaches, bone spurs, pinched nerves, herniated discs, and deteriorating disc disease [TR 165]. Crace completed tenth grade with past relevant work as a fast food worker, a motel housekeeper, and a food server.[TR 8, 34, 56]. On the date of her application, Crace was thirty-seven years old [TR 152].

Her claim was denied initially and upon reconsideration [TR 86-89, 97-99]. Crace subsequently requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on January 19, 2012 [TR 28-62]. At the hearing, the ALJ heard testimony from Crace and the vocational expert ("VE"), Gina Baldwin. After considering all the evidence in the administrative record, including the testimony of Crace and the VE, the ALJ issued a decision finding Crace not disabled on March 7, 2012 [TR 11-20].

In reaching his decision, the ALJ began his analysis at step one by determining that Crace has not engaged in substantial gainful activity since June 15, 2010, the application date [TR 13]. At step two, the ALJ found that Crace

suffers from the following severe impairments: degenerative disc disease of the spine and migraine headaches [TR 13]. Continuing on to the third step, the ALJ determined that these impairments or combination of impairments are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments [TR 15]. *See* 20 C.F.R. pt. 404, subpt. p, app'x 1. Next, the ALJ determined Crace's residual functional capacity, or RFC. An RFC is the assessment of a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1). In this case, the ALJ found that Crace has the following RFC:

> lift/carry 20 pounds occasionally and 10 pounds frequently; frequently kneel; occasionally stoop, crouch, and climb ramps and stairs; never able to climb ladders, ropes, and scaffolds; and must avoid concentrated exposure to vibration.

[TR 15].

The fourth step requires the ALJ to determine whether, based on her RFC, the claimant can return to her past relevant work. In this case, the ALJ, relying on the testimony of the VE, determined that Crace is unable to perform her past relevant work [TR 18]. The ALJ then turned to the fifth and final step of the sequential evaluation analysis. At this step, the ALJ questioned the VE as to whether an individual with Crace's RFC

and vocational factors could perform other jobs that exist in significant numbers in the national economy. The VE identified the jobs of house sitter, night cleaner, office messenger, surveillance system monitor, grader/sorter, and product inspector as jobs that the hypothetical individual with Crace's RFC and vocational factors could perform, and opined that these jobs exist in significant numbers in the national economy [TR57-58]. Relying on this testimony, the ALJ found Crace not disabled.

Crace subsequently requested review by the Appeals Council [TR 6]. The Appeals Council denied her request for review on April 19, 2013 [TR 1-3]. Thus, Crace has exhausted her administrative remedies, and she has filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

**III. ANALYSIS**

Crace asserts several errors on appeal. The Court turns first to her argument that the ALJ's findings are not based on substantial evidence because he failed to include osteoporosis as a severe impairment at step two of the sequential evaluation analysis. This argument fails because the ALJ did not find Crace not disabled at step two. Rather, the ALJ concluded that Crace had other severe impairments and continued on with his analysis [TR 21]. The fact that the ALJ found other severe impairments

but did not include osteoporosis is irrelevant because a failure to find that a particular impairment was severe is not reversible error if other severe impairments are found and the sequential evaluation process continues. *See Maziarz v. Secretary of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *McGlothin v. Commissioner of Social Security*, 2008 WL 4772077, at *6 (6th Cir. Oct. 31, 2008)(noting it became "legally irrelevant" that an ALJ determined some impairments not severe because the ALJ found the claimant had some severe impairments and proceeded to complete the remaining steps of the sequential evaluation process).

Crace also argues that the ALJ's erred by failing to include her mental impairment as a severe impairment at step two of the sequential evaluation analysis. However, a review of the ALJ's order reveals that he carefully analyzed Crace's alleged mental impairments in accordance with the regulations. When evaluating the severity of a mental impairment, the ALJ must evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." 20 C.F.R. 416.920a(b)(1). Because Crace's treating physicians noted that she suffers from anxiety and prescribed her medication [TR 268-73] and because the consulting psychologist, Megan Green, Psy.D., diagnosed her with adjustment disorder [TR 350-53], the ALJ applied the

special technique outlined in 20 C.F.R. § 916.920a. This regulation requires the ALJ to "rate the degree of functional limitation resulting from the impairment(s)" with respect to "four broad functional areas": [a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id*. The degree of limitation in the first three functional areas is rated using a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using the following four-point scale: none, on or two, three, four or more. *Id*. If the ALJ rates the first three functional areas as "none" or "mild" and the fourth as "none," the impairment is generally not considered severe and the claimant is conclusively not disabled. 20 C.F.R. § 416.920a(d)(1). *See also Rabbers v. Commissioner of Social Security*, 582 F.3d 647, 652-53 (6th Cir. 2009). Otherwise, the impairment is considered severe and the ALJ will proceed to step three.

In this case, the ALJ determined that Crace has no limitation in the functional area of daily living [TR 14]. Crace's testimony regarding her daily activities provieds substantial evidence in support of this finding. Crace testified that she takes her medication and cares for her disabled daughter, including feeding her and reading to her.

She stated that she takes short walks, washes dishes, and told the consulting psychologist that she sometimes dusts, helps with dishes, and puts laundry into the washer [TR 24, 48, 51, 351].

The ALJ found mild limitation in the area of social functioning [TR 14]. While Crace testified that she does not want to leave her house and that she quit going to church, she reported that she shops and spends time with her family [TR 41, 52, 200, 350-51]. Even though Crace did not report any problems in the area of concentration, persistence or pace, the ALJ also found mild limitation in these areas. Crace has not pointed to evidence supporting a more restrictive limitation in these areas, and her testimony provides substantial evidence in support of the ALJ's finding.

Finally, as the ALJ noted, the record has failed to reveal any episodes of decompensation which have been of extended duration [TR 14]. Based on these findings, the regulations mandate a finding that Crace's medically determinable mental impairments are nonsevere. 20 C.F.R. § 416.920a(d)(1). Thus, the ALJ did not err at step two of the sequential evaluation process.

Next, Crace argues that the ALJ failed to discuss, at anytime in his analysis, the psychological evaluation by Leigh Ann Ford, Ph.D. Dr. Ford examined Crace in January 2012 and noted that her memory was normal, her facial expressions were

sad, and her mood was depressed [TR 366]. Furthermore, her speech was normal and goal directed, and her judgment was good [TR 366]. However, Dr. Ford diagnosed a depressive disorder, not otherwise specified, and a generalized anxiety disorder, not otherwise specified [TR 368]. While she opined that Crace could obtain employment, she stated that it would be difficult for her to sustain full-time employment due to her emotional impairments [TR 368]. In a medical source statement, Dr. Ford opined that Crace was seriously limited in her ability to deal with the public, interact with supervisors, and demonstrate reliability [TR 369-70]. Although the ALJ was made aware of Dr. Ford's assessment at the hearing, the ALJ did not discuss the assessment in his decision. However, in response to a hypothetical question from the ALJ that included Dr. Ford's limitations, the VE testified that such a person would not be able to work [TR 59-60].

The ALJ did not err in failing to discuss Dr. Ford's assessment. The regulations provide that the ALJ "evaluate every medical opinion" that it receives. 20 C.F.R. 404.1527(c). However, every medical opinion is not treated equally. The regulations describe three classifications for acceptable medical opinions: (1) nonexamining sources; (2) nontreating sources; and (3) treating sources. A nonexamining source is "a physician, psychologist, or other acceptable medical source who

has not examined [the plaintiff] but provides a medical or other opinion in [the plaintiff's] case." 20 C.F.R. 404.1502, 416.902. A nontreating source is described as "a physician, psychologist, or other acceptable medical source who has examined [the plaintiff] but does not have, or did not have, an ongoing treatment relationship with [the plaintiff]." *Id*. Finally, the regulations define a treating source as "[the plaintiff's] own physician, psychologist, or other acceptable medical source who provides [the plaintiff], or has provided [the plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the plaintiff]." *Id*. An "ongoing treatment relationship" is a relationship with an "acceptable medical source when the medical evidence establishes that [the plaintiff] see[s], or [has] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the plaintiff's] medical condition(s)." *Id*.

An ALJ is required to give "controlling weight" to the medical opinion of a treating source, as compared to the medical opinion of a non-treating source, if the opinion of the treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record. 20 C.F.R. § 416,927. *See also Tilley v. Commissioner of Social Security*,

394 Fed.Appx. 216, 222 (6th Cir. 2010); *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009). The ALJ must provide "good reasons" for the resulting weight given to the treating source. Soc.Sec.Rul. 96-2p. The "treating source rule" and the "good reasons" rule, however, do not apply in this case because Dr. Ford was not Crace's treating physician. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007)(the SSA only requires ALJs to give reasons for rejecting opinions of treating sources). As a one-time examiner, Dr. Ford's opinion is not entitled to any special deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)(consultative examiners' opinions are not entitled to any "special degree of deference").

Additionally, substantial evidence supports the ALJ's mental RFC finding. In formulating Crace's mental RFC, the ALJ relied on treatment notes from her primary care physicians at Burchett Family Practice, where Crace received conservative treament for depression and anxiety [TR 268-73, 345-48, 371-88]. The ALJ noted that Crace did not receive treatment from any mental health specialist [TR 13]. Failure to seek mental health treatment from a specialist undermines her claim of a severe mental impairment. *See* 20 C.F.R. § 416.929(c)(3)(v); *Atterberry v. Secretary of Health and Human Servs.*, 871 F.2d 567, 571-72 (6th Cir. 1988)(claimant's allegations of a severe mental

impairment undermined where she did not receive treatment from a psychologist or psychiatrist).

Furthermore, the ALJ relied on the consultative examination of Megan Green, Psy.D., who noted that Crace cried, was depressed, and did not sleep [TR 13, 352]. Crace reported having meaningful relationships outside her family and that she spent most of her time caring for her disabled adult daughter [TR 35-51]. She reported that she had no mental health treatment beyond her primary care physician and no psychiatric hospitalizations [TR 351]. She also reported no history of occupational impairment associated with mental health concerns [TR 353]. Dr. Green noted that she was fully oriented, cooperative, friendly, had a depressed mood, appropriate affect, and intact concentration [TR 13-14, 351]. She diagnosed Crace with adjustment disorder with depressed mood and noted that her prognosis was fair [TR 352]. She did not place any restrictions on her ability to understand, remember and carry out instructions, and opined that she would likely respond appropriately to supervision and probably be capable of sustaining adequate concentration, persistence or pace [TR 352]. Dr. Green's opinion, in conjunction with the medical records from Crace's treating physicians and her lack of mental health treatment, provides substantial evidence for the ALJ's mental

RFC finding. Accordingly, Crace's claim based on this alleged error fails.

In sum, Crace has failed to meet her burden of proving that her condition caused more disabling limitations than those found by the ALJ. The ALJ properly considered the relevant evidence and properly analyzed all the evidence in accordance with the sequential evaluation process. As set out above, substantial evidence supports the ALJ's findings and his conclusion that Crace is not disabled within the meaning of the Social Security Act.

**IV. CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the plaintiff's motion for summary judgment [DE #11] is **DENIED**;

(2) the defendant's motion for summary judgment [DE #12] is **GRANTED**;

(3) the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4) a judgment consistent with this Opinion & Order will be entered contemporaneously.

This the 26th day of August, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge